Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Spencer L. Pfeiff (SBN 343305)
Spencer@ SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOSELINE CARMONA and ESTEBAN CARMONA, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LAKE ELSINORE CDJR; DPEP, INC., dba LAKE ELSINORE CHRYSLER DODGE JEEP RAM,<br><br>Defendants. | Case No.: 26-CV-1354-JLS-MMP<br><br>**<u>CLASS ACTION</u>**<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:<br><br>FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.<br><br>CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785 ET SEQ.<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature also determined that accurate credit reporting is vital and enacted the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

3. Yoseline Carmona and Esteban Carmona (collectively "Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), bring this action to challenge the conduct of Lake Elsinore CDJR and DPEP, Inc., dba Lake Elsinore Chrysler Dodge Jeep Ram (collectively "Defendants") and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for the obtaining consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b(f) and Cal. Civ. Code § 1785.31(a)(3).

4. Plaintiffs makes these allegations based on personal knowledge and investigation conducted by Plaintiffs' attorneys.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

7. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, 15 U.S.C. § 1639c(e)(1) and 28 U.S.C. § 1367 for supplemental state claims.

9. The action arises out of Defendants' violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

10. Because Defendants is authorized to and regularly conducts business in the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391 and for the following reasons: (i) Plaintiffs resides within this judicial district, (ii) the conduct complained herein occurred within this judicial district, and (iii) Defendants conducts business within this judicial district at all times relevant.

## PARTIES & DEFINITIONS

12. Plaintiffs Yoseline Carmona and Esteban Carmona ("Plaintiffs") are husband and wife and are both "consumers" as that term is defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b).

13. Defendant Lake Elsinore CDJR ("Lake Elsinore CDJR") is an automobile dealership located in Lake Elsinore, California, and regularly conducts business within the State of California. Lake Elsinore CDJR regularly seeks to arrange vehicle financing for prospective customers and, in doing so, obtains consumer credit reports from one or more consumer reporting agencies. Lake Elsinore

CDJR is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports. Lake Elsinore CDJR also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiffs and is bound by U.S.C. 1681s-2. Lake Elsinore CDJR is a "person" as defined by 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

14. Defendant DPEP, Inc., doing business as Lake Elsinore Chrysler Dodge Jeep Ram ("DPEP, Inc."), is a California Stock Corporation registered with the California Secretary of State (Entity No. 3654956) with its principal place of business at 31400 Auto Center Drive, Lake Elsinore, California 92530. On information and belief, DPEP, Inc. is the entity that operated the Lake Elsinore Chrysler Dodge Jeep Ram dealership at all times relevant to this action, is a licensed automobile dealer and Chrysler franchisee, and is the entity that caused the unauthorized credit inquiries described herein to be placed on Plaintiffs' consumer credit reports. DPEP, Inc. regularly seeks to arrange vehicle financing for prospective customers and, in doing so, obtains consumer credit reports from one or more consumer reporting agencies. DPEP, Inc. is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports. DPEP, Inc. also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiffs and is bound by 15 U.S.C. § 1681s-2. DPEP, Inc. is a "person" as defined by 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

15. Lake Elsinore CDJR and DPEP, Inc. are collectively referred to herein as "Defendants." As used in this Complaint, references to "Defendant" or "Defendants" shall refer collectively to both named Defendants unless the

context otherwise requires. Plaintiffs are presently investigating the exact corporate relationship between Lake Elsinore CDJR and DPEP, Inc. and reserve the right to amend this pleading upon the completion of discovery.

16. The causes of action herein pertain to Plaintiffs' "consumer report" under 15 U.S. Code § 1681a(d) and Plaintiffs' "consumer credit report" under Cal. Civ. Code § 1785.3(c), in that inaccurate representations of Plaintiffs' credit worthiness, credit standing and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

17. At all relevant times, Plaintiffs were customers of Defendants and had previously purchased a vehicle from Defendants in April 2025.

18. In or about August 2025, Plaintiffs briefly discussed the possibility of upgrading their vehicle with Defendants. During that conversation, Defendants advised Plaintiffs that they would not qualify for new financing until they completed at least one year of payment history on their existing vehicle loan. Plaintiffs were advised to return in April 2026.

19. Plaintiffs did not apply for credit with Defendants at that time, and no credit application was completed in August 2025.

20. After the August 2025 conversation, Plaintiffs had no further communications with Defendants regarding any vehicle purchase, lease, or financing.

21. Plaintiffs did not authorize Defendants, either orally or in writing, to obtain their consumer credit reports at any time after August 2025.

22. On or about October 23, 2025, Plaintiffs began receiving multiple credit monitoring alerts notifying them that numerous hard inquiries had been placed on their consumer credit reports.

23. Upon further investigation, Plaintiffs discovered that Defendants had caused numerous hard inquiries to be placed on both Plaintiffs' credit reports on or about October 23, 2025.

24. The hard inquiries appearing on Plaintiff Esteban Carmona's consumer reports included, but were not limited to, inquiries by Ally Financial, Altura Credit Union, Axos Bank, First Tech Federal Credit Union, LP/DMS/Altura CU/Amtru, Nccin/Lake Elsinore, Stellantis Financial, The Golden 1 Credit Union, Wells Fargo Bank, DPEP Incorporated, and JPMorgan Chase Bank.

25. The hard inquiries appearing on Plaintiff Yoseline Carmona's consumer reports included, but were not limited to, inquiries by Ally Financial, Altura Credit Union, Axos Bank, First Tech Federal Credit Union, LP/DMS/Altura CU/Amtru, Nccin/Lake Elsinore, Stellantis Financial, The Golden 1 Credit Union, Wells Fargo Bank, and DPEP Incorporated.

26. In total, Defendants caused approximately twelve (12) or more hard inquiries to be placed on each Plaintiff's credit file in a single day.

27. These inquiries were initiated without Plaintiffs' knowledge, authorization, or consent.

28. Plaintiffs immediately contacted Defendants to inquire about the sudden and unexpected credit inquiries.

29. Plaintiffs immediately attempted to call Defendants' customer service line but was unable to speak to a live representative.

30. Defendants initially claimed that a sales associate believed Plaintiffs were "still interested" in purchasing a vehicle.

31. Plaintiffs informed Defendants that they had never authorized any credit checks, never completed any credit application, and never requested any financing in October 2025.

32. Plaintiffs personally visited Defendants' dealership to demand an explanation and corrective action.

33. During these communications, Defendants admitted that the credit inquiries were made in error and without Plaintiffs' authorization.

34. Defendants acknowledged that the inquiries resulted from a "miscommunication" between a sales representative and management.

35. Defendants further admitted that the inquiries may have been run for multiple financing and leasing options, which explained the unusually high number of hard inquiries.

36. On or about October 24, 2025, Defendants issued written letters to Experian, Equifax, and TransUnion acknowledging that credit inquiries were mistakenly run for both Plaintiffs without their explicit authorization.

37. In those letters, Defendants expressly admitted that the inquiries were made "without authorization" and requested that the credit reporting agencies remove the inquiries from Plaintiffs' credit reports.

38. Despite these admissions, many of the unauthorized inquiries remained on Plaintiffs' credit reports for a substantial period of time.

39. As a direct result of Defendants' conduct, Plaintiffs' credit scores dropped significantly, by approximately forty (40) points.

40. Due to the negative impact on their credit scores, Plaintiffs were unable to obtain favorable credit and were denied a refinancing loan with San Diego County Credit Union.

41. Plaintiffs were forced to spend substantial time and effort reviewing their credit reports, contacting Defendants, disputing inquiries with the credit bureaus, and seeking legal counsel.

42. Plaintiffs incurred costs in connection with disputing the unauthorized inquiries, including anticipated expenses for certified dispute correspondence.

43. Plaintiffs suffered mental anguish, anxiety, frustration, embarrassment, and loss of sleep as a result of the Defendants' unlawful conduct.

44. The Fair Credit Reporting Act mandates that consumer reports be obtained only for permissible purposes enumerated in the statute.

45. Under the FCRA, a "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose the consumer report is authorized to be furnished" and one other condition is met."

46. Defendants did not obtain Plaintiffs' consumer reports for any purpose that Plaintiffs authorized. Through this conduct, Defendants violated 15 U.S.C. § 1681b(f).

47. The authorized purposes specified in the FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

48. Plaintiffs did not seek any extension of credit from Defendants on or about October 23, 2025. Yet, Defendants obtained Plaintiffs' consumer credit reports anyway.

49. In or around October 2025, Plaintiffs did not authorize Plaintiffs' credit files to be furnished to Defendants, and Defendants did not obtain Plaintiffs credit file in connection with any credit transaction involving the extension of credit to Plaintiffs. As such, Defendants used and obtained Plaintiffs' consumer reports without a permissible purpose.

50. Through this conduct Defendants violated 15 U.S.C. § 1681b(f) and Cal. Civ. Code § 1785.31(a)(3).

51. Defendants' conduct violates a substantive provision of the FCRA intended to protect Plaintiffs' substantive privacy interest in Plaintiff's private credit information.

52. Defendants' violations of Plaintiffs' substantive rights invariably offends the interests that the FCRA protects.

53. Defendants' conduct demonstrates an intrusion of highly personal information in violation of the FCRA.

54. Defendants' conduct was highly offensive and not trivial because Plaintiffs' credit reports contained highly personal information and Defendants deprived Plaintiffs the right to keep such information private.

55. By illegally accessing Plaintiffs' highly personal information, Defendants included at least twelve (12) additional hard inquiry on each of Plaintiffs' credit reports which negatively affected Plaintiffs' credit scores causing them to decrease.

56. These hard inquiries were visible to potential creditors and negatively affected Plaintiffs' creditworthiness.

57. As a direct and proximate result of Defendants' conduct, Plaintiffs lost credit opportunities and were denied financing for which they would otherwise have qualified.

58. Defendants' conduct was willful, reckless, and in conscious disregard of Plaintiffs' rights under the FCRA and CCRAA.

59. Defendants failed to maintain procedures reasonably adapted to avoid obtaining consumer reports without authorization or a permissible purpose.

60. As a result of Defendants' willful action and inaction, Plaintiffs suffered from anxiety, frustration, stress, lack of sleep, nervousness, and embarrassment because of Defendants' invasive conduct of illegally obtaining Plaintiffs' private and highly sensitive credit information.

61. Defendants' conduct has caused Plaintiffs to waste time reviewing Plaintiffs' credit reports, waste time with Defendants on the phone, search for an attorney, pay attorney fees, as well as caused Plaintiffs to suffer mental and emotional anguish, humiliation, and embarrassment as a result of Defendants' invasive and illegal conduct.

62. Plaintiffs seek statutory damages, actual damages, and injunctive relief under 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681o(a); Cal. Civ. Code § 1785.31(a); and Cal. Civ. Code § 1785.31(b).

## CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this lawsuit as a class action on behalf of themselves and Class Members of the proposed Classes. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

64. Plaintiffs propose the following two Classes consisting of and defined as follows:

a. The Impermissible Purpose Class for Violations of the Fair Credit Reporting Act ("FCRA"), consisting of:

> All persons whose credit reports were furnished to Defendants without authorization and unrelated to any transaction involving the extension of credit to that person, within the two years prior to the filing of the Complaint.

b. The California Impermissible Purpose Class for Violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), consisting of;

> All persons in California whose credit reports were knowingly obtained by Defendants without authorization and unrelated to any transaction involving the extension of credit to that person, within the two years prior to the filing of the Complaint.

65. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has controlling interest, and its legal representatives, officers,

directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injury as a result of the facts alleged herein.

66. Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

67. Numerosity: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is currently unknown to Plaintiffs at this time; however, given that, on information and belief, Defendants' conduct resulted in thousands of impermissible credit inquires within California and across the Country during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

68. Commonality: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendants obtained Class Members authorization to use or obtain Class Members' credit reports;
- Whether Defendants obtained Class Members credit files in connection with any transaction involving the extension of credit to Class Members;
- Whether within the statutory period, Defendants obtained or used Class Members credit reports for a purpose not enumerated by the FCRA 15 U.S.C. § 1681f(b) or Cal. Civ. Code § 1785.31(a)(3);
- Whether Plaintiffs and Class members were damaged thereby, and the extent of damages for such violation; and
- Whether Defendants should be enjoined from engaging in such conduct in the future.

69. Typicality: Plaintiffs did not authorize Plaintiffs' credit files to be furnished to Defendant, and Defendants did not obtain Plaintiffs' credit files in connection with any credit transaction involving the extension of credit to Plaintiffs and thus, their injuries are also typical to Class Members.

70. Plaintiffs and Class Members were harmed by the acts of Defendants in at least the following ways: Defendants obtained and used Plaintiffs' and Class Members' credit files by way of a hard inquiry which negatively affected Plaintiffs' and Class Members' credit scores and credit worthiness. Plaintiffs and Class Members were damaged thereby.

71. Adequacy: Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he is similarly situated, as demonstrated herein. Plaintiffs acknowledge that they have an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the FCRA and CCRAA. Plaintiffs have incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

72. Predominance: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class. The elements of the legal claims brought by Plaintiffs and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

73. Superiority: A class action is a superior method for the fair and efficient adjudication of this controversy because:

a. Class-wide damages are essential to induce Defendants to comply with

Federal and California law.

b. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

c. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e. Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

74. Plaintiffs and the Class Members have all suffered and will continue to suffer uniform harm and damages as a result of Defendants' unlawful and wrongful conduct. Specifically, because of Defendants' illegal conduct, Plaintiffs' and Class Members' credit scores have been negatively affected which prevented Plaintiffs and Class Members from receiving and accepting offers of credit. A class action is also superior to other available methods because as individual Class Members have no way of discovering that Defendants conducted inquiries into their credit reports without a permissible purpose.

75. The Class may also be certified because:

- the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards

of conduct for Defendant;

- the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and
- Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

76. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

77. The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class Members can be identified through Defendants' records.

## CAUSES OF ACTION

## COUNT I

## THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681 ET SEQ.

78. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

79. It is Defendants' practice to obtain consumer reports in the course of considering consumers for new credit products.

80. Defendants used or obtained consumer reports to consider consumers for new credit products even when the consumers had not applied for the products and wherein Defendants had no permissible purpose for the consumer reports.

81. Defendants used or obtained consumer reports without a permissible purpose in connection with unauthorized applications for credit products.

82. The FCRA mandates that consumer reports be used or obtained only for permissible purposes enumerated in the statute. 15 U.S.C. § 1681b(f).

83. Under the FCRA, a "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose fo which the consumer report is authorized to be furnished" and one other condition is met. 15 U.S.C. § 1681b(f).

84. The authorized purposes specified in the FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

85. Since, Defendants did not obtain consumer reports with the consumers' authorization nor in connection with a credit transaction involving the consumers, Defendants obtained consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b(f).

86. As a result of each and every negligent violation of the FCRA, Plaintiffs and Class Members are entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1) and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

87. As a result of each and every willful violation of the FCRA, Plaintiffs and Class Members are entitled to actual damages and statutory damages of not less than $100 and not more than $1,000 and such amount as the court may allow pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

///

///

///

**COUNT II**

**THE CONSUMER CREDIT REPORTING AGENCIES ACT**

**CAL. CIV. CODE § 1785.1, ET SEQ.**

88. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

89. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

90. It was Defendants' practice to obtain consumer reports in the course of considering consumers for new credit products.

91. Defendants used or obtained consumer reports to consider consumers for new credit products even when the consumers had not applied for the products and wherein Defendants had no permissible purpose for the consumer reports in violation of Cal. Civ. Code § 1785.31(a)(3).

92. As a result of such unlawful conduct, Plaintiffs and the Class Members were damaged, in an amount according to proof but in an amount of not less than $2,500, pursuant to Cal. Civ. Code § 1785.31(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class Members pray that judgment be entered against Defendant, and Plaintiffs and the Class Members be awarded damages from Defendant, as follows:

- Certify the Class as requested herein;
- Appoint Plaintiffs to serve as the Class Representatives for the Class; and
- Appoint Plaintiffs' Counsel as Class Counsel in this matter for the Class.

In addition, Plaintiffs and the Class Members pray for further judgement as follows against Defendant:

///

///

///

**IMPERMISSIBLE CREDIT REPORT INQUIRES UNDER 15 U.S.C. § 1681B(F)**

- $1,000 to each Class Member pursuant to 15 U.S.C. § 1681n(a)(1)(A);
- Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(2);
- Any other relief the Court may deem just and proper including interest.

**IMPERMISSIBLE CREDIT REPORT INQUIRES UNDER CAL. CIV. CODE § 1785.31**

- $5,000 to each Class Member pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- $2,500 to each Class Member pursuant to Cal Civ. Code § 1785.31(a)(3);
- Reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(d);
- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to Cal. Civ. Code § 1785.31(b);
- Any other relief the Court may deem just and proper including interest.

**TRIAL BY JURY**

93. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs and Class Members are entitled to, and demand, a trial by jury.

Date: May 26, 2026

SWIGART LAW GROUP, APC

By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorney for Plaintiffs and the putative class